AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

# UNITED STATES DISTRICT COURT

20 FEB 13 PM 1: 43

for the

District of New Mexico

CLERK-LAS CRUCES

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Kyocera Model E6910 Cellular Telephone w/ IMEI
Number 015100000583444 of Adrian Alexander Gomez
(Subject Telephone)

)
)
)
)
)
)

Case No. MR-20283

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):* a black, Kyocera Model E6910 Cellular Telephone of Adrian Alezander Gomez, more fully described in Attachment A, and currently in the custody of the FBI at the FBI's Albuquerque evidence room.

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B, attached and incorporated fully by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 & 846 | Possession with Intent/Distribute Methamphetamine, Conspiracy |

The application is based on these facts:
See attached affidavit, Attachment C, attached and incorporated fully by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI TFO Nicolas Berumen
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 13 Feb 2020

*Judge's signature*

City and state:  Las Cruces, New Mexico

Gregory B. Wormuth, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The affidavit, *see* **Attachment C**, is submitted in support of warrants to search and seize information, more fully described in **Attachment B**, contained in the following electronic devices (referred to in **Attachment B** and **Attachment C** as the "Subject Telephone"), to include any SIM cards found in or within the Subject Telephone.

### Subject Telephone

The Subject Telephone is described as a black Kyocera cell phone (Model E6910; IMEI Number 015100000583444; Serial Number 510000058344; assigned telephone number 1-575-914-0052) in a black case. Subject Adrian Alexander Gomez's wife, Donna P. Grado, provided this phone to Federal Bureau of Investigation (FBI) Special Agent Piere Himel on February 7, 2020 in response to a law enforcement request the day after Subject Gomez was arrested on the indictment associated with Case Number 5:19-cr-03720-RB. The Subject Telephone is currently in the custody of the FBI in the Albuquerque, New Mexico evidence room, and is depicted below.

 

Front                    Back

## ATTACHMENT B

### PARTICULAR THINGS TO BE SEIZED/INFORMATION TO BE RETRIEVED

The particular things to be seized include all records, in whatever format, stored on Subject Telephone ("Subject Telephone") described in **Attachment A** that are related to violations of 21 U.S.C. §§ 841 and 846 by Adrian Alexander Gomez, including:

1. Digital, cellular, direct connect, and/or other phone numbers, names, addresses, and other identifying information of customers, distributors, sources of supply and other associates of the user of the Subject Telephone;

2. Digital, cellular, direct connect, and/or other phone numbers dialed from, which contacted, or which are otherwise stored on, the Subject Telephone, along with the date and time each such communication occurred;

3. Any message logs or messages, whether sent from, to, or drafted on, the Subject Telephone, along with the date and time each such communication occurred;

4. The content of voice mail messages stored on the Subject Telephones, along with the date and time each such communication occurred;

5. Photographs or video recordings;

6. Information relating to the schedule, whereabouts, or travel of the user of the Subject Telephone;

7. Information relating to other methods of communications utilized by the user of the Subject Telephone and stored on the Subject Telephone;

8. Bank records, checks, credit card bills, account information and other financial records; and

9. Evidence of user attribution showing who used or owned the Subject Telephone, such as logs, phonebooks, saved usernames and passwords, documents, and internet browsing history.



## ATTACHMENT C

## AFFIDAVIT IN SUPPORT OF ORDER AUTHORIZING SEARCH WARRANT

Your Affiant, Nicolas Berumen, having been duly sworn, does hereby depose and say:

1. I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) assigned to the Roswell, New Mexico Resident Office.  As a TFO, I am empowered by Title 21, Section 878 of the United States Code to effect arrests, searches, and seizures for violations of the federal narcotics laws.  I have been a TFO since October 2018, during which time I have specialized in investigations involving narcotics trafficking.  Prior to that, your Affiant worked for over 2 years as a Deputy with the Chaves County Sheriff's Department.  I have received specialized training on the subject of narcotics trafficking and money laundering and have been personally involved in investigations concerning the possession, distribution, and importation of controlled substances, including methamphetamine as well as methods used to finance narcotic transactions.

2. I am familiar with the facts and circumstances of this investigation as result of my personal participation in the investigation, discussions with other agents who were involved in the investigation and review of reports written by other agents concerning the investigation.

3. Through my training and experience, I know that narcotics traffickers often maintain one or more cellular or "smart" telephones ("devices") which they utilize to further their narcotics trafficking.  Narcotics traffickers use these devices to communicate operational directives and information concerning the conduct of the organization's illegal activities to other organization members, including their suppliers, distributors and other co-conspirators.   I know based upon my training and experience that timely communication of information between organizational members is critical to the overall success of an organization's illegal activities.  The critical nature of this information is derived from the necessity of the organization's management to provide instructions for the importation, storage, transportation, and distribution of narcotics, as well as the subsequent laundering of the proceeds of these illegal activities.

4. I further know from my training and experience, that a cache of information including dialed, received or missed calls and text messages sent, received or placed in draft status, can be found on these devices.  I know that the identities and telephone numbers of other participants in the narcotics trafficking activity are maintained in the contact lists of these devices.  In my experience, narcotics traffickers also use these devices to take and store photographs or video recordings of themselves with their co-conspirators and with contraband including narcotics, currency and firearms.  Narcotics traffickers also use the GPS or

1

location applications of these devices, which can reveal their whereabouts when they conducted or arranged narcotics related activities or travel. In addition, narcotics traffickers also use these devices to store information related to the financial transactions that occur during the course of their narcotics trafficking, such as drug ledgers and financial accounts and transactions. In my experience, the devices used by narcotics traffickers often contain evidence relating to their narcotics trafficking activities including, but not limited to, contact lists, lists of recent call activity, stored text and voice mail messages, photographs and video recordings, GPS and location information, and financial accounts and records.

5. I further know that some devices utilize subscriber identity module ("SIM") cards. A SIM card is a chip that is used to authenticate a device to a network. The SIM card generally contains subscriber information, authentication information, and may contain contacts and encryption information. The portability of SIM cards in some devices allows a user to easily change devices, while maintaining the same telephone number, by removing the card from one device and inserting it into another. While SIM cards may have the capability to store some of the evidence described above, the storage capacity of devices tends to far exceed that of SIM cards. What information is stored on the SIM card, on the device, or is stored in both locations varies depending on the user-defined settings on the device and the memory capacity of the SIM card. Accordingly, information pertaining to drug trafficking activity may be located on both the SIM card itself, as well as the device in which the SIM card was inserted.

6. The following information is based upon my personal knowledge as well as information provided by other federal, state or local officers and is presented as probable cause to search a black Kyocera cell phone of subject Adrian Alexander Gomez (Model E6910; IMEI Number 015100000583444; Serial Number 510000058344) which was assigned phone number 1-575-914-0052 at the time of its seizure ("Subject Telephone"), to include any SIM cards found in or with the Subject Telephone. Subject Adrian Alexander Gomez's wife, Donna P. Grado, provided this phone to Federal Bureau of Investigation (FBI) Special Agent Piere Himel on February 7, 2020 in response to a law enforcement request the day after Defendant was arrested on the indictment associated with Case Number 5:19-cr-03720-RB. Though Defendant signed an FBI "Consent to Search" form for this telephone on February 7, 2020, I am seeking this warrant out of an abundance of caution due to Defendant's comments pertaining to his consent. The Subject Telephone is currently in the custody of the FBI in the Albuquerque, New Mexico evidence room.

7. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to establish probable cause to search the Subject Telephone for evidence of violations of 21 U.S.C. §§ 841 and 846. To the extent statements of Subject Adrian Alexander Gomez and other individuals are referenced in this

2

affidavit, these statements are general summaries of what was stated, and are not intended to be taken as exact verbatim quotes.

8.     The request to search Subject Telephone is based on the following facts:

a.  On March 30, 2019, at approximately 1:06 p.m., Chaves County Sherriff's Office (CCSO) Deputy Charles Drake and Sgt. Hector Ramirez were dispatched to 1808 Isler Rd. in Roswell, New Mexico, in reference to a domestic disturbance. Upon arrival, Sgt. Ramirez noticed a heavy-set male, later identified as subject Adrian Alexander Gomez (Gomez), walk briskly to the west side of the residence. Sgt. Ramirez exited his unit and walked towards where he believed the male subject went. Gomez was then noticed coming from the east side of the residence, breathing heavily as if he had been running. Gomez was asked why he was breathing hard and he stated he was chasing the dogs.

b.  Sgt. Ramirez then went to the front door of the residence and made contact with Gomez's wife, Donna P. Grado, who stated that she has been separated from her husband, Gomez, for the past month. Ms. Grado went on to say that after informing Gomez that she wanted a divorce, Gomez arrived at her residence and started cussing at her, yelling at her, and acting "crazy." Ms. Grado did not state that Gomez had been violent with anyone in the residence, but advised that Gomez was "on something."

c.  Sgt. Ramirez then went back outside to advise Gomez that he needed to leave the premises. At this point, Gomez was standing outside arguing with his mother. Gomez's mother advised law enforcement that she did not want Gomez going back to her residence (where Gomez had been staying) because he has a methamphetamine problem, gets paranoid about people stealing his money, and gets angry and has busted windows and punched holes in the wall of her home.

d.  After Gomez left the scene, Ms. Grado and Gomez's mother indicated that they wanted Deputy Drake and Sgt. Ramirez to check around the residence for fear that Gomez may have done something to the house. Ms. Grado also stated that Gomez had something white in his hand and that he opened her vehicle. With Ms. Grado's consent, her vehicle was checked, but nothing suspicious was found. The officers then checked the exterior of the residence.

e.  Upon checking the east side of the residence, Sgt. Ramirez observed a white air conditioning unit on the ground next to the home. Sgt. Ramirez also noticed freshly-moved dirt indicating the air conditioner had recently been moved. The air conditioning unit was lifted on its side, and Sgt. Ramirez located a large Ziploc bag underneath. This bag appeared to have several smaller individually-packaged baggies with a white, crystal-like

substance inside. The bag was taken to Chaves County Sheriff's Office, where it was weighed and field-tested. The field test indicated that the crystal-like substance in the large Ziploc bag was methamphetamine. The large Ziploc bag, which contained twelve smaller baggies of presumptive methamphetamine weighing approximately one ounce each, weighed 350 gross grams. The presumptive methamphetamine was subsequently sent to the New Mexico Southern Forensic Laboratory for testing. As of the time of the writing of this search warrant, the lab results are still pending.

f. After law enforcement discovered the large bag of presumptive methamphetamine under the air conditioner, Gomez was taken into investigatory detention and transported to the Chaves County Sheriff's Office to be interviewed. CCSO Deputy Michael Shannon read Gomez his *Miranda* rights, and Gomez agreed to give a statement to law enforcement.

g. At this interview, Gomez stated that he got into a verbal altercation with his wife over him checking his diabetes with the glucose machine. Gomez admitted to smoking methamphetamine because it helps him manage pain from various medical issues that he suffers from. He further admitted that the 350 gross grams of crystal-like substance found in the large Ziploc bag under the air conditioner was methamphetamine, claiming that is was for his "personal use." He also admitted that his DNA would be found on the bag, and to placing the bag under the air conditioner to hide it from law enforcement. When asked where he got the methamphetamine from, Gomez stated that a friend let him have it as payment for money owed to him. Gomez further stated that he habitually smokes very large amounts of methamphetamine, in the amount of approximately half an ounce a day. When asked about the white object in his hand that his mother mentioned, Gomez stated that the only item in his hand was a lightbulb that he used to smoke methamphetamine. Ultimately, Gomez maintained that all 350 gross grams of methamphetamine was for his personal use, and that he "wasn't selling shit."

h. In my training and experience, and from my discussions with other agents and officers who work on narcotics cases, 350 gross grams of methamphetamine is an amount associated with distribution and not personal use.

i. Gomez was indicted on or about October 16, 2019 for Possession with Intent to Distribute 50 Grams and More of a Mixture and Substance Containing Methamphetamine, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and was arrested on or about February 6, 2020. The basis for the indictment is the March 30, 2019 incident described above.

j.  Chaves County Metro Narcotics/Gang Task Force Agent Alex Barleen learned that CCSO Deputy David Whitzel had arrested Gomez on an outstanding federal arrest warrant for trafficking methamphetamine on February 6, 2020. Agent Barleen had knowledge that the FBI was the investigating agency and that FBI TFO Nicolas Berumen, was the case agent. Gomez was transported to the Chaves County Sheriff's Office for booking and Agent Barleen was requested to assist in the booking process by Deputy Whitzel. Agent Barleen was also asked to participate in a post-*Miranda* interview of Gomez.

k.  At the interview, Gomez was advised of his *Miranda* rights, and indicted that he understood his rights. During the recorded interview, Gomez stated that he has changed his ways, and denied ownership of the presumptive methamphetamine that he affirmed was his back in March of 2019. Gomez asked what choices he had in the investigation. Agent Barleen informed Gomez that his options were to cooperate with their interview or not cooperate with the interview, but that he would be arrested on the charges either way. Gomez asked the agents to turn off the recorder on the table of the room, and Agent Barleen told him he could not. The interview then ended, and agents escorted Gomez out of the room. While Gomez was leaving, he asked unsolicited questions about what his options were and Agent Barleen again explained to him that he could cooperate or not. Deputy Whitzel transported Gomez to the booking area for transport to the Chaves County Detention Center.

l.  As Deputy Whitzel drove out of the booking bay, he waved Agent Barleen down and told him that Gomez wished to speak with him. Agent Barleen opened the door to the vehicle and did not say anything to Gomez. Gomez then asked Agent Barleen if he could give up his source of supply. Agent Barleen told him the process for that would be to tell him, the FBI, or his attorney that he wished to make a deal. Gomez told Agent Barleen that he only knew the first name of his source and that he could find out the last name of his source from his phone, which was in his wife's possession. Gomez further stated that he had contact information for his source and believed that his source was still active in Mexico. Agent Barleen told Gomez he would forward the information to the appropriate individuals.

m.  The next day, on February 7, 2020, Defendant signed a consent form to allow agents to search his phone with FBI SA David De Los Santos and FBI SA Piere Himel as agents were transporting him from the Chaves County Detention Center to court for his initial appearance. Defendant contacted his wife and told her to provide his phone to law enforcement. Gomez's wife, Ms. Grado, then provided the Subject Telephone to FBI Special Agent Piere Himel on February 7, 2020.

9. Based on the above information, there is probable cause to believe that evidence of violations of 21 U.S.C. §§ 841 and 846 are located in the Subject Telephone. Therefore, I respectfully request that this Court issue search warrants for the Subject Telephone, more particularly described in Attachment A, authorizing the seizure and examination of the items described in Attachment B.

Dated this 3th day of February, 2020.

Nicolas Berumen
FBI TFO

SUBSCRIBED and SWORN to before me this 3th day of February, 2020.

Gregory B. Wormuth
United States Magistrate Judge

6